OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

January 14, 2002

The Honorable Eddie Lucio, Jr.
Chair, Committee on Border Affairs
Texas State Senate
P.O. Box 12068
Austin, Texas 78711

Opinion No. JC-0450

Re: Whether section 2001.556 of the Occupations Code prohibits a revenue-share leasing agreement between a manufacturer of bingo equipment and a distributor of bingo equipment (RQ-0417-JC)

Dear Senator Lucio:

You ask whether section 2001.556 of the Occupations Code prohibits a revenue-share leasing agreement between a manufacturer of bingo equipment and a distributor of bingo equipment.[1] Section 2001.556 prohibits price fixing by manufacturers, distributors, and suppliers of bingo equipment and provides that the price of bingo equipment "in the competitive marketplace shall be established by the manufacturer, distributor, or supplier and may not be established in concert with another manufacturer, distributor, or supplier." TEX. OCC. CODE ANN. § 2001.556(b) (Vernon 2002). If under a revenue-share leasing agreement the manufacturer controls the price the distributor charges to bingo-game conductors for leased equipment, the agreement violates section 2001.556.

Section 2001.556, a provision of the Bingo Enabling Act, id. ch. 2001, provides:

> (a) A manufacturer, distributor, or supplier may not by express or implied agreement with another manufacturer or distributor fix the price at which bingo equipment or supplies used or intended to be used in connection with bingo conducted under this chapter may be sold.

> (b) The price of bingo supplies and equipment in the competitive marketplace shall be established by the manufacturer, distributor, or supplier and may not be established in concert with another manufacturer, distributor, or supplier.

---

[1] Letter from Honorable Eddie Lucio, Jr., Chair, Committee on Border Affairs, Texas State Senate, to Honorable John Cornyn, Texas Attorney General (Aug. 13, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

*Id.* § 2001.556.

This office addressed this provision at length in Attorney General Opinion JC-0269, in which we were asked whether under section 2001.556 a manufacturer of bingo equipment and a distributor of bingo equipment could agree as to the price at which the distributor would sell bingo equipment to a charity. We were also asked whether our answer would change if the bingo equipment were leased rather than sold.

Relying on the express language of the statute, particularly the wording of subsection (a) of section 2001.556, and the overarching purpose of the Bingo Enabling Act to regulate relationships between interests in the bingo industry, we concluded that the statute prohibits a vertical price-fixing agreement between a manufacturer and a distributor as well as horizontal price-fixing agreements between two or more manufacturers or between two or more distributors. *See* Tex. Att'y Gen. Op. No. JC-0296 (2000) at 3-6; *see also id.* at 5 ("section 2001.556 appears to have a different purpose than antitrust law . . . . [I]t appears that this provision is concerned less with free enterprise and competitive pricing than with strict regulation of manufacturers and distributors of bingo equipment and their relationships with persons who conduct bingo."). We also concluded that section 2001.556 does not distinguish between bingo-equipment *sales* and *leases*, relying particularly upon the broad language of subsection (b):

> [S]ubsection (b) of [section 2001.556] states more broadly that "[t]he price of bingo supplies and equipment in the competitive marketplace shall be established by the manufacturer, distributor, or supplier and may not be established in concert with another manufacturer, distributor, or supplier." TEX. OCC. CODE ANN. § 2001.556(b) (Vernon 2000). Based on the broad language of subsection (b), which is not limited to sales, we conclude that the section 2001.556 prohibition on price fixing applies to pricing of bingo equipment generally, and applies to the pricing of leases as well as sales.

*Id.* at 6. Your request letter indicates that you disagree with our construction of section 2001.556, as do two briefs we received on this matter.[2] However, neither the request letter nor the briefs raise authorities we did not consider in our earlier opinion nor do they point to any subsequent developments in the law. Thus, rather than extensively reanalyze the statute or our prior opinion here, we simply apply section 2001.556 as we construed it in Attorney General Opinion JC-0296.

---

[2]*See* Brief from Brian J. O'Toole, Kasling, O'Toole & Hemphill, L.L.P., to Honorable John Cornyn, Texas Attorney General (Oct. 12, 2001) (on behalf of Trend Gaming Systems, L.L.C., and GameTech International); Brief from Jane Thompson, Thompson Allstate Bingo Supply, Inc., to Susan D. Gusky, Chair, Opinion Committee, Office of Texas Attorney General (Oct. 8, 2001) (on file with Opinion Committee).

You ask about the legality under section 2001.556 of a "revenue-share leasing agreement" between a manufacturer and a distributor, which you describe as follows:

> Several manufacturers of bingo cardminding equipment operate through "revenue share" leasing arrangements with their distributors. Under a typical revenue share arrangement, a manufacturer leases equipment to the distributor in exchange for a percentage of the revenues that the distributor earns by subleasing the equipment. The distributor leases the equipment to conducting organizations at a particular bingo hall, in exchange for a portion of the revenues that the conductors receive from their bingo customers. The conductor retains the ability to set the prices to the end customer, which results in fluctuation of the conductor's lease payment to the distributor, and in turn the distributor's lease payment to the manufacturer. This arrangement reduces the financial risk to the charity in a lease with the distributor.
>
> Obviously, the amount of money the manufacturer receives is dependent on the amount of money the distributor receives from the conductors. *Therefore, it is common in the industry for the manufacturer to have the right to approve the terms of the distributor's contract with the conductors.* If the distributor proposed to lease the equipment to conductors at, for example, 5% of the conductors' revenue, the transaction likely would not make economic sense to the manufacturer and the manufacturer could refuse to lease equipment at that rate to its distributor.

Request Letter, *supra* note 1, at 1 (emphasis added). Although you have not expressly stated whether these agreements control the price at which the distributor leases equipment to bingo-game conductors, we assume this to be the case, based on your statement that the manufacturer has "the right to approve the terms of the distributor's contract with the conductors." *Id.*; *see also id.* at 3-4 ("[T]he revenue share lease necessarily requires some sort of agreement or approval from the manufacturer regarding the distributor's contract with the conductor."). As we understand it, under a revenue-share leasing agreement, the bingo-game conductor leases equipment from a distributor for a percentage of the conductor's revenue rather than a fixed monetary price. This percentage share is in fact the price the distributor charges the conductor for the use of the equipment. An agreement that allows a manufacturer to dictate the percentage of revenue the distributor will take from the conductor, controls the price the conductor pays the distributor. If these agreements do indeed control the price at which the distributor leases equipment to bingo-game conductors, then they involve price fixing between a manufacturer and distributor and are prohibited by section 2001.556.

You suggest that even if section 2001.556 applies to leases in general, it does not apply to revenue-share leases, citing section 2001.405 of the Occupations Code. That statute provides as follows:

> Bingo may not be conducted at a leased premises if rental under the lease is to be paid, in whole or part, on the basis of a percentage of the receipts or net proceeds derived from the operation of the game or by reference to the number of people attending a game.

TEX. OCC. CODE ANN. § 2001.405 (Vernon 2002). You argue that it is significant that "[t]here is no similar prohibition against setting an equipment lease payment based on the amount of revenue derived from the use of the equipment," because "[h]ad the Legislature or the Lottery Commission sought to prevent percentage leases for cardminding equipment, certainly they could have done so." Request Letter, *supra* note 1, at 3. We disagree. The legislature's express prohibition of certain kinds of rental arrangements in section 2001.401, which essentially precludes the landlord of a game from having an economic stake in the game, has no bearing on what is and is not permissible in contractual relationships between bingo-equipment manufacturers and distributors under section 2001.556. Moreover, we do not necessarily conclude that section 2001.556 prohibits all revenue-share leasing agreements, which would involve consideration of provisions beyond the scope of your request. *See, e.g.,* TEX. OCC. CODE ANN. § 2001.407 (Vernon 2002) (generally governing equipment and supply transactions). Rather, we conclude that section 2001.556 prohibits revenue-share leasing agreements in which the manufacturer and the distributor agree on the price that the distributor will charge the conductor.

In sum, if under a revenue-share leasing agreement the manufacturer controls the price that the distributor charges to bingo-game conductors for leasing equipment, the agreement violates section 2001.556. As this office does not review or construe specific contracts,[3] we answer your question generally and do not express any opinion with respect to any particular contract.

---

[3]*See, e.g.,* Tex. Att'y Gen. Op. Nos. JC-0032 (1999) at 4 (contract interpretation beyond purview of this office); DM-383 (1996) at 2 (interpretation of contract not appropriate function for opinion process); DM-192 (1992) at 10 ("This office, in the exercise of its authority to issue legal opinions, does not construe contracts."); JM-697 (1987) at 6 ("review of contracts is not an appropriate function for the opinion process").

## S U M M A R Y

A revenue-share leasing agreement violates section 2001.556 of the Occupations Code, which precludes a bingo-equipment manufacturer, distributor, or supplier from agreeing to fix the price of bingo equipment, if under the agreement the manufacturer controls the price that the distributor charges to bingo-game conductors for leasing equipment.

Very truly yours,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee